```
                    UNITED STATES DISTRICT COURT
                  NORTHERN DISTRICT OF MISSISSIPPI


UNITED STATES OF AMERICA     .       Cause No. 1:12CR02
                             .
          Plaintiff          .       Oxford, Mississippi
                             .       October 9, 2012
            v.               .       2:05 p.m.
                             .
RYAN DANDRE HEARN            .
                             .
          Defendant          .
. . . . . . . . . . . . . . . .




        CHANGE OF PLEA AS TO COUNT 2 OF THE INDICTMENT
             BEFORE THE HONORABLE MICHAEL P. MILLS
               UNITED STATES CHIEF DISTRICT JUDGE



APPEARANCES:

For the Government:          United States Attorney's Office
                             Northern District of Mississippi
                             BY: ROB COLEMAN, ESQ.
                             900 Jefferson Avenue
                             Oxford, Mississippi  38655-3608

For the Defendant:           ROBERT WAYNE DAVIS, JR., ESQ.
                             Davis Law Firm
                             542 Jefferson Avenue
                             Post Office Box 1525
                             Tupelo, Mississippi 38802-1525

Court Reporter:              Rita Davis Young, FCRR, RPR, CSR
                             Post Office Box 933
                             Pontotoc, Mississippi  38863
                             (662) 416-2038

Proceedings recorded by mechanical stenography, transcript
produced by computer.
```

```
 1  (CALL TO ORDER OF THE COURT)
 2            THE COURT:  Madam Clerk, would you call the docket,
 3  please.
 4            THE COURTROOM DEPUTY:  Court calls Cause No.
 5  1:12CR02, United States of America v. Ryan Dandre Hearn.  This
 6  is a change of plea as to Count 2 of the indictment.
 7            THE COURT:  Who do we have from the Government?
 8            MR. COLEMAN:  Rob Coleman for the Government, Your
 9  Honor.
10            THE COURT:  And for the defense?
11            MR. DAVIS:  Chip Davis, Your Honor.
12            THE COURT:  Do you have your client with you?
13            MR. DAVIS:  I do.
14            THE COURT:  And who do we have from probation?
15            MR. FOUNTAIN:  Andrew Fountain, Your Honor.
16            THE COURT:  Are you ready to proceed, Mr. Davis?
17            MR. DAVIS:  Yes, sir.
18            THE COURT:  If you would come forward, please.
19       (PARTIES COMPLYING.)
20            THE COURT:  You want to administer the oath.
21       (OATH ADMINISTERED BY THE COURTROOM DEPUTY.)
22            THE COURT:  Mr. Hearn, do you understand that you're
23  now under oath; and if you answer any of my questions falsely,
24  your answers may later be used against you in another
25  prosecution for perjury or making false statements?
```

1      **THE DEFENDANT:** Yes, sir.
2      **THE COURT:** And I'm told that you wish to enter a
3 plea of guilty to Count 2 of the indictment; is that correct?
4      **THE DEFENDANT:** Yes, sir.
5      **THE COURT:** And before taking your plea, there are a
6 number of questions that I have to ask you.
7      **THE DEFENDANT:** Yes, sir.
8      **THE COURT:** If at any time you don't understand a
9 question or you wish to consult with your attorney, you let me
10 know.
11      **THE DEFENDANT:** Yes, sir.
12      **THE COURT:** Okay?
13      **THE DEFENDANT:** Yes, sir.
14      **THE COURT:** What is your full name?
15      **THE DEFENDANT:** Ryan Dandre Hearn.
16      **THE COURT:** And how old are you?
17      **THE DEFENDANT:** Twenty-one years old.
18      **THE COURT:** How far did you go in school?
19      **THE DEFENDANT:** I got my GED at the age of 16, and I
20 went to community college at the age of 16 also.
21      **THE COURT:** And --
22      **THE DEFENDANT:** So I completed a semester and a half
23 of college, community college.
24      **THE COURT:** Where did you go?
25      **THE DEFENDANT:** Northeast Community College in

1 Booneville, Mississippi.

2     **THE COURT:** Okay. Have you been treated recently for
3 any mental illness or addiction to narcotic drugs of any kind?

4     **THE DEFENDANT:** No, sir, not since I've been
5 incarcerated.

6     **THE COURT:** Okay. Well, are you currently under the
7 influence of any drugs, medication or alcoholic beverage?

8     **THE DEFENDANT:** No, sir.

9     **THE COURT:** Do you think you fully understand what is
10 happening here today?

11     **THE DEFENDANT:** Yes, sir.

12     **THE COURT:** Mr. Davis, you've talked with your client
13 today and earlier, I presume. Do you have any question about
14 his competency to enter a plea?

15     **MR. DAVIS:** None, Your Honor.

16     **THE COURT:** Does the Government have any question as
17 to the defendant's competency to enter a plea at this time?

18     **MR. COLEMAN:** No, Your Honor.

19     **THE COURT:** Well, I find that Mr. Hearn is competent
20 to enter a plea.

21     Have you received a copy of the indictment pending against
22 you in this case?

23     **THE DEFENDANT:** Yes, sir.

24     **THE COURT:** Have you fully discussed those charges
25 and the case in general with Mr. Davis as your attorney?

1   **THE DEFENDANT:** Yes, sir.
2   **THE COURT:** Are you fully satisfied with the counsel,
3 representation, and advice given to you in this case by your
4 attorney?
5   **THE DEFENDANT:** Yes, sir.
6   **THE COURT:** Has anybody attempted in any way to force
7 you to plead guilty?
8   **THE DEFENDANT:** No, sir.
9   **THE COURT:** Are you pleading guilty of your own free
10 will because you are guilty?
11   **THE DEFENDANT:** Yes, sir.
12   **THE COURT:** You understand that under the
13 Constitution and the laws of the United States you're entitled
14 to a trial by jury?
15   **THE DEFENDANT:** Yes, sir, I understand.
16   **THE COURT:** And do you understand at trial you would
17 be presumed innocent, and the Government would be required to
18 prove you guilty beyond a reasonable doubt; and you would not
19 be required to prove your innocence?
20   **THE DEFENDANT:** Yes, sir.
21   **THE COURT:** Do you further understand that in the
22 course of the trial witnesses for the Government would have to
23 come into court and testify in your presence; your attorney
24 could cross-examine the witnesses for the Government; and he
25 could also call other witnesses to testify on your behalf?

1    **THE DEFENDANT:** Yes, sir.
2    **THE COURT:** And are you aware if you wished to
3 testify yourself in your own defense you would have that right
4 to do so, but if you chose not to testify no inference or
5 suggestion of guilt would be drawn by you so choosing?
6    **THE DEFENDANT:** Yes, sir.
7    **THE COURT:** If you plead guilty here today and if I
8 accept your plea, do you understand that you're going to waive
9 your right to trial and the other rights I just discussed with
10 you?
11   **THE DEFENDANT:** Yes, sir.
12   **THE COURT:** And that means that there will not be a
13 trial --
14   **THE DEFENDANT:** Yes, sir.
15   **THE COURT:** -- and I will enter a judgment of guilty
16 and sentence you on the basis of your guilty plea after
17 considering the presentence report.
18   **THE DEFENDANT:** Yes, sir.
19   **THE COURT:** Having discussed these rights with you,
20 is it still your desire to plead guilty to Count 2 of the
21 indictment?
22   **THE DEFENDANT:** Yes, sir.
23   **THE COURT:** Have you received a copy of the charges
24 against you?
25   **THE DEFENDANT:** Yes, sir.

1     **THE COURT:** And do you understand that you're charged
2  with knowingly stealing and unlawfully taking and carrying away
3  firearms from the person, premises and business inventory of
4  The Gold Exchange located in Nettleton, Mississippi?
5     **THE DEFENDANT:** Yes, sir.
6     **THE COURT:** Before you could be found guilty of this
7  charge, the Government would have to prove certain elements
8  against you beyond a reasonable doubt.
9     Mr. Coleman, will you read the elements into the record,
10 please?
11    **MR. COLEMAN:** Yes, Your Honor. First, that on or
12 about the date charged, in the Northern District of
13 Mississippi, you did knowingly steal and take and carry away
14 firearms from the premises of a federally-licensed firearms
15 dealer. And secondly, that the firearms were in, or affecting,
16 commerce, that is, that before you possessed the firearms they
17 had traveled at some time from one state to another.
18    **THE COURT:** Do you have any questions about this
19 charge?
20    **THE DEFENDANT:** No, sir.
21    **THE COURT:** And do you understand the maximum penalty
22 you could be sentenced to?
23    **THE DEFENDANT:** Yes, sir.
24    **THE COURT:** And I believe it's not more than ten
25 years imprisonment, not more than a $250,000 fine --

1       **THE DEFENDANT:** Yes, sir.

2       **THE COURT:** -- and not more than three years
3 supervised release, and $100 mandatory special assessment.
4 Have those been explained to you?

5       **THE DEFENDANT:** Yes, sir.

6       **THE COURT:** Has there been a plea agreement entered
7 into?

8       **MR. COLEMAN:** There has, Your Honor.

9       **THE COURT:** Would you state into the record the
10 substance of the plea agreement, please?

11       **MR. COLEMAN:** Your Honor, the substance of the plea
12 agreement is as follows: The defendant agrees to plead guilty
13 under oath to Count 2 of the indictment. Count 2 charges that
14 Mr. Hearn, on or about July 9, 2009, did knowingly steal and
15 unlawfully take and carry away firearms, that is, a Smith &
16 Wesson Victory Model 38 caliber rifle, a Ruger Model Single-Six
17 22-caliber revolver, and a Bryco Arms Model Jennings
18 9-millimeter automatic pistol from the person, premises and
19 business inventory of The Gold Exchange located in Nettleton,
20 Mississippi, a business licensed to engage in the business of
21 dealing in firearms, which firearms had previously been shipped
22 or transported in interstate commerce. All in violation of
23 Title 18 United States Code Sections 922(U) and 924.

24     Further, the United States agrees not to charge the
25 defendant with any other offenses arising from or related to

1  the above charges and agrees to dismiss all other counts of the
2  indictment as to this defendant upon conclusion of sentencing
3  on Count 2.
4      Your Honor, I notice in the plea agreement there is a
5  typographical error where it says "and three"; but it's only a
6  plea to Count 2.  Regarding restitution, the defendant
7  understands that the Court may order restitution for all
8  offenses committed and specifically agrees that restitution is
9  not limited to the count of conviction.
10     This agreements does not bind any prosecuting authority of
11 any state or any other federal district.  Further, if the
12 defendant violates this agreement, all statements made pursuant
13 hereto will be admissible against the defendant.
14     Apart from being advised of the application of the U.S.
15 Sentencing Guidelines and other than as set forth elsewhere in
16 the plea documents, no promise or representation whatsoever has
17 been made to the defendant as to what punishment the Court
18 might impose if it accepts his plea of guilty.
19     This agreement fully reflects all promises, agreements and
20 understandings between the defendant and the United States
21 Attorney.  The defendant's agreement is knowing, free and
22 voluntary and not the product of force, threat or coercion.  He
23 is pleading because the defendant is in fact guilty.  And
24 there's also a plea supplement that accompanies the plea
25 agreement, Your Honor.

1 **THE COURT:** All right. Mark through the words "and
2 three" in Paragraph 2 and initial it and present it to
3 Mr. Davis and Mr. Hearn and let them initial it.
4 **MR. COLEMAN:** Yes, Your Honor.
5 **THE COURT:** And then --
6 (Parties complying.)
7 **MR. DAVIS:** Your Honor, if it please the Court,
8 Mr. Hearn and I have initialed the change.
9 **THE COURT:** All right. Let those be entered. Just
10 give it to the clerk. All right. Mr. Hearn, you heard the
11 prosecutor state his understanding of the agreement that you
12 entered into with the Government. Did he accurately explain it
13 as you understand it to be?
14 **THE DEFENDANT:** Yes, sir.
15 **THE COURT:** And has anybody made any promises to what
16 sentence you will receive?
17 **THE DEFENDANT:** No, sir.
18 **THE COURT:** And you understand that this offense
19 is -- to which you're pleading guilty is a felony; and if your
20 plea is accepted, you will be adjudged guilty of that offense
21 and such adjudication may deprive you of valuable civil rights,
22 such as the right to vote, the right to hold public office, the
23 right to serve on a jury, and the right to possess any kind of
24 firearm?
25 **THE DEFENDANT:** Yes, sir.

1 **THE COURT:** The United States Sentencing Commission
2 has issued guidelines for judges to follow in determining the
3 sentence in a criminal case. These guidelines are advisory.
4 Have you and Mr. Davis talked about how the sentencing
5 guidelines might apply to your case?
6 **THE DEFENDANT:** Yes, sir.
7 **THE COURT:** And do you understand that the Court will
8 not be able to determine the guideline sentence for your case
9 until after the presentence report has been completed, and you
10 and the Government have had an opportunity to challenge the
11 reported facts and the application of the guidelines
12 recommended by the probation officer; and the sentence imposed
13 may be different from any estimate your attorney may have given
14 you?
15 **THE DEFENDANT:** Yes, sir.
16 **THE COURT:** Do you understand that after your
17 guideline range has been determined the Court has the authority
18 to depart from the guidelines and impose a sentence that is
19 more severe or less severe than the sentence called for by the
20 guidelines?
21 **THE DEFENDANT:** Yes, sir.
22 **THE COURT:** Do you understand that parole has been
23 abolished; and if you're sentenced to prison, you will not be
24 released on parole?
25 **THE DEFENDANT:** Yes, sir.

1 **THE COURT:** Do you understand that under some
2 circumstances you or the Government may have the right to
3 appeal any sentence that I impose?
4 **THE DEFENDANT:** Yes, sir.
5 **THE COURT:** What is the Government's evidence against
6 Mr. Hearn?
7 **MR. COLEMAN:** Your Honor, were the case to go to
8 trial, the Government would expect to prove by judicial notice,
9 the presentation of documentary and physical evidence, the
10 testimony of lay witnesses and the opinion testimony of expert
11 witnesses the following, on July 9, 2009 James Gillentine and
12 Mark Burroughs were working at the respective businesses,
13 Gillentine at his car lot and Burroughs at The Gold Exchange, a
14 federal firearms licensee, neighboring businesses in Nettleton,
15 Mississippi.
16     Gillentine and Burroughs stated that they were in a shared
17 area of the business when Hearn and Montgomery entered The Gold
18 Exchange.  Gillentine and Burroughs stated that they had a
19 clear view of both Hearn and Montgomery as the men exited the
20 vehicle parked directly in front of the building and walked
21 toward The Gold Exchange entrance.
22     Burroughs advised ATF agents that he had walked behind the
23 sales counter at the front of The Gold Exchange when the two
24 individuals entered the store, and one of the men immediately
25 struck him in the side of his head with a blunt object he did

1 not see but believed to be the butt of a firearm.  Burroughs
2 fell to the floor unconscious after being struck.  He suffered
3 a broken nose, a damaged orbital socket and cuts requiring
4 several stitches to the side of his head.
5      Mr. Gillentine advised agents that he was in the shared
6 area of the business when Montgomery and Hearn entered The Gold
7 Exchange.  He heard noises from the front of the store and went
8 to investigate.  When he walked into the front of the store, he
9 saw the man later identified as Hearn jumping from behind the
10 counter and running out the front door.
11      Gillentine ran out a side door of the building and tackled
12 a man later identified as Hearn and struggled with him on the
13 ground.  Gillentine witnessed Montgomery throw approximately
14 $5,000 stolen from the business into the truck -- or the SUV
15 driven by Hearn.
16      Shortly after the robbery, Nettleton police officers
17 arrived on the scene.  Police officers witnessed multiple
18 scrapes and bruises on Gillentine's arms, legs and abdomen.
19 Law enforcement officers were informed that in addition to the
20 $5,000 taken from the business, the two men also took from The
21 Gold Exchange inventory a Ruger 22-caliber revolver, a Smith &
22 Wesson 357-caliber revolver, and a Jennings 9-millimeter
23 semiautomatic pistol.
24      According to Mr. Gillentine, while he struggled with
25 Hearn, he had more opportunity to see Hearn face-to-face.

1  Hearn called for help, and Montgomery returned and struck
2  Gillentine in the head with the butt of a pistol.  Gillentine
3  then released Hearn in fear that Montgomery might shoot him.
4  Mr. Gillentine ran back into the store where he retrieved a
5  firearm and fired several shots at the vehicle as Montgomery
6  and Hearn fled the scene.
7       Later, when law enforcement presented a driver's license
8  photo of Hearn, Mr. Gillentine and Mr. Burroughs made positive
9  identifications of Hearn as one of the individuals who
10 committed the robbery at The Gold Exchange.
11      Upon questioning by ATF agents, Montgomery stated that he
12 did not know the name of the other individual involved in the
13 robbery but knew him by his nickname, "Mempho."  When shown a
14 photographic display, Montgomery positively identified Ryan
15 Hearn as the individual known to him as "Mempho."
16      Montgomery further stated that he and Hearn were the only
17 individuals involved in the robbery.  After Montgomery was
18 identified as one of the robbers, a search of his vehicle
19 resulted in the recovery of a Smith & Wesson 357-caliber
20 revolver taken from the business.
21      Further describing the events surrounding the robbery,
22 Montgomery stated that he -- that he, Hearn, advised him that
23 Hearn lost his job at Ashley Furniture and needed money to make
24 his truck payment.  Montgomery told Hearn that The Gold
25 Exchange would be easy to rob.

1    Montgomery further stated that after arriving at The Gold
2 Exchange he was the first to enter the business and walk past
3 an employee behind the counter.  As Montgomery asked Burroughs
4 a question, Hearn struck Burroughs before he could answer.
5    Montgomery described how Hearn then jumped over the
6 counter and ran out the door with the money taken from the
7 business.  As Montgomery exited the store, he grabbed the
8 firearms and saw Hearn and Gillentine struggling on the ground.
9 Montgomery stated he jumped in the SUV and yelled for Hearn to
10 come on.  Hearn yelled, "I can't; he got me."
11    When freed from Gillentine, Hearn and Montgomery got into
12 the SUV; and Montgomery told Hearn to back the vehicle over
13 Gillentine if still on the ground.  As they drove away,
14 Montgomery heard shots fired.
15    Montgomery and Hearn traveled to Verona, Mississippi where
16 Hearn hid the firearms and money behind a relative's house.
17 The two men planned to meet later to divide the money.
18    Approximately two days later, Montgomery states that Hearn
19 came to him to purchase some marijuana.  Montgomery stated that
20 Hearn did not want to share the money from the robbery, but
21 Hearn wanted to dispose of the firearms.
22    Additionally, the Government was prepared to call as
23 witnesses several individuals to whom Hearn confessed his
24 participation in the crime.  Hearn confided in some individuals
25 while inmates with him in jail and another outside of jail.

1    An ATF nexus expert would testify that the firearms taken
2 from the business had traveled in interstate commerce prior to
3 the robbery.  Your Honor, the United States would ask the Court
4 to take judicial notice that Lee and Monroe Counties are
5 located within the Northern Judicial District of the state of
6 Mississippi.
7           **THE COURT:**  All right.  Thank you.
8           **MR. COLEMAN:**  Yes, sir.
9           **THE COURT:**  Mr. Hearn, you heard the prosecutor state
10 what evidence he had to present against you on this particular
11 charge.  Did you do what he said you did?
12          **MR. DAVIS:**  Your Honor, if it please the Court, I'll
13 let Mr. Hearn answer for himself in a moment; but I would like
14 to take a moment to state that we disagree with the portion of
15 the statement wherein Mr. Burroughs claims he was struck by a
16 firearm.  We also disagree that Mr. Gillentine was struck with
17 a firearm.  Otherwise --
18          **THE COURT:**  What were they struck with?
19          **MR. DAVIS:**  Your Honor, I believe Mr. Burroughs was
20 struck with a fist.  Mr. Gillentine, I believe, was kicked, is
21 my understanding.
22          **THE COURT:**  Is that correct, Mr. Hearn?
23          **THE DEFENDANT:**  Yes, sir.
24          **THE COURT:**  Does that create any problems for you,
25 Mr. Coleman?

1    **MR. COLEMAN:** Your Honor, I don't see it as a problem
2 as far as a change of plea is concerned. I think it would be
3 something that would have to be addressed at sentencing.
4    **THE COURT:** Okay. Well, other than that, do you
5 agree with what he said, Mr. Hearn?
6    **THE DEFENDANT:** Yes, sir.
7    **THE COURT:** All right. Well, I'll accept that as far
8 as taking his plea. But if we have to address it at
9 sentencing, we will.
10    **MR. DAVIS:** Yes, sir.
11    **THE COURT:** And both of you be prepared to put on
12 your proof. Well, I find that there is a factual basis for
13 Mr. Hearn to plead guilty. Do you plead guilty or not guilty
14 to Count 2 of the indictment?
15    **THE DEFENDANT:** I plead guilty.
16    **THE COURT:** It is the finding of the Court in the
17 case of the *United States of America v. Ryan Dandre Hearn* that
18 the defendant is fully competent and capable of entering an
19 informed plea; that the defendant is aware of the nature of the
20 charges and the consequences of the plea; and that the plea of
21 guilty is a knowing and voluntary plea supported by an
22 independent basis in fact containing each of the essential
23 elements of the offense.
24    Your plea is therefore accepted, and you are now adjudged
25 guilty of that offense. Your sentencing will be 60 to 90 days

1 from now.

2     Is there anything further from the Government?

3       **MR. COLEMAN:** Not on behalf of the Government, Your
4 Honor.

5       **THE COURT:** Anything from the defense?

6       **MR. DAVIS:** Nothing from the defense, Your Honor.

7       **THE COURT:** Probation?

8       **MR. FOUNTAIN:** No, Your Honor.

9       **THE COURT:** Mr. Morrow, did you have anything?

10       **THE MARSHAL:** No, sir.

11       **THE COURT:** Did you have anything at this time?

12       **THE MARSHAL:** No, sir.

13       **THE COURT:** All right. If there's nothing further,
14 you may be excused. Court will be in recess.

15         (THE HEARING ENDED AT 2:23 p.m.)

16

        C E R T I F I C A T I O N

17

18   "I certify that the foregoing is a correct transcript from
19 the record of proceedings in the above-entitled matter, May 3,
20 2013."

21

22       /s/ Rita Davis Young
      RITA DAVIS YOUNG, FCRR, RPR, BCR, CSR #1626
23       Official Court Reporter

24

25